[Cite as *State v. Carter*, 2014-Ohio-926.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99925

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## VERONICA L. CARTER

DEFENDANT-APPELLANT

### JUDGMENT:
CONVICTIONS AFFIRMED;
REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-565319

**BEFORE:** Celebrezze, P.J., Rocco, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 13, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Nathaniel Tosi
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant, Veronica L. Carter, appeals her seven aggravated arson convictions. She claims the verdicts are against the manifest weight of the evidence and the trial court erred in awarding restitution to one of the victims. After a thorough review of the record and law, we affirm appellant's convictions, but remand the case for resentencing.

## I. Factual and Procedural History

{¶2} Appellant was arraigned in the Cleveland Municipal Court on July 30, 2012, and bound over to the Cuyahoga County Common Pleas Court on August 13, 2012. She was charged with one count of aggravated arson in violation of R.C. 2909.02(A)(2), a felony of the second degree, and seven counts of aggravated arson in violation of R.C. 2909.02(A)(1), felonies of the first degree — one count for each victim present in the house. [1] During pretrials, appellant was referred to the court psychiatric clinic for evaluation. The resulting report was stipulated to by both sides and the court adopted its findings. The examining clinician found that appellant was competent to stand trial and competent at the time of her alleged crimes.

{¶3} On March 19, 2013, a bench trial began after a jury waiver was executed by appellant. At trial, the state presented the testimony of victims Cornella Smith, Montae

---

[1] The indictments indicate those individuals were Michelle Smith, Montae Smith, Montell Smith, Marcellus Smith, Eugene Smith, Kenneth Montgomery, and Barron Horton.

Smith, and Barron Horton.  Two fire investigators, Joseph Stevens and Nurrudin Jinna, also testified.

{¶4} At the close of the state's case, it dismissed one of the counts of first-degree-felony aggravated arson related to Marcellus Smith after Cornella testified that Marcellus was not present at the house that night.  The state also moved to amend the indictment to reflect the actual names of the victims as identified by testimony.  The trial court granted the motion to amend Michelle Smith's name to Cornella Smith and Eugene Smith to Eugene Anthony.  Appellant then testified about the events of that night.

{¶5} The trial court found appellant guilty of one count of second-degree aggravated arson and six counts of first-degree aggravated arson.  However, the journal entry that resulted from the trial indicates appellant was found not guilty of one count of aggravated arson.  The trial court noticed the error at the July 27, 2013 sentencing hearing and indicated it would correct the error in a separate journal entry.  The trial court then sentenced appellant to two years of community control — a departure from the presumption of prison.  The court also imposed a suspended aggregate prison sentence of five years after merging allied offenses.  The court imposed sentence on three counts of aggravated arson, including Count 2, on which the journal entry mistakenly indicated appellant was found not guilty.  Specifically, the trial court stated, "I'm going to impose five years on Count 1, five years on Count 2, the aggravated arson, and Count 3, the aggravated arson.  All the other counts, Counts 2, 4, 6, 7, and 8, all will merge into Count

3 for sentencing purposes." The trial court entered a nunc pro tunc entry indicating Count 5, relating to Marcellus Smith, had been dismissed by the state, but it did not correct the error relating to Count 2. Instead the entry deleted the sentence imposed on Count 2. Appellant filed the instant appeal assigning three errors for review:

I. The guilty verdicts are against the manifest weight of the evidence.

II. The trial court committed error and acted without authority when it ordered restitution to a person who was an alleged victim only of a count as to which appellant, Veronica Carter, was found not guilty.

III. Insofar as appellant may have waived her right to complain about the trial court's order in imposing restitution to a person who was not a victim of any offense of which she was convicted, she received constitutionally ineffective assistance of counsel.

## II. Law and Analysis

### A. Manifest Weight

{¶6} Appellant argues that her convictions for aggravated arson are against the manifest weight of the evidence. She cites to the conflicting testimony of the victims as demonstrating that proof beyond a reasonable doubt does not exist in this record and the evidence weighs in favor of acquittal.

{¶7} When reviewing manifest weight claims, this court must review the record and engage in a "limited weighing of evidence to determine whether sufficient competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt." *State v. Jewett*, 10th Dist. Franklin No. 11AP-1028, 2013-Ohio-1246, ¶ 33. We sit as the thirteenth juror in judgment of appellant, except that we lack the benefit of seeing the witnesses testify and miss out on important cues and inflections that inform such a

decision.  Therefore, the trier of fact is in a better position to judge the credibility of witnesses, but this court must still engage in a limited examination of credibility.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26.  This court,

> reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶8} Appellant was convicted of six counts of aggravated arson under R.C. 2909.02(A)(1) and one count of aggravated arson under R.C. 2909.02(A)(2).  These provide, "[n]o person, by means of fire or explosion, shall knowingly * * * (1) [c]reate a substantial risk of serious physical harm to any person other than the offender; [or] (2) Cause physical harm to any occupied structure[.]"  "'Based upon the very nature of the crime, proof of arson must, of necessity, often rely heavily on circumstantial evidence.'"  *Jewett* at ¶ 27, quoting *State v. Weber*, 124 Ohio App.3d 451, 462, 706 N.E.2d 427 (10th Dist.1997), citing *State v. Pruiett*, 9th Dist. Summit No. 12858, 1987 Ohio App. LEXIS 6481 (Apr. 15, 1987).  Appellant does not take issue with any of the discrete elements that must be proved, but only that she was not the person who started the fire.  With that in mind, we turn to the testimony adduced at trial.

{¶9} Fire investigators Joseph Stevens and Nurrudin Jinna testified about the extent of the fire, the damage to the structure, the area of ignition, and the likely cause.

The photographs introduced through their testimony demonstrated significant damage to the home, which consisted of two dwelling units. They also testified about the heat and smoke such a fire would have produced and the effects this would have on occupants who remained inside during the course of the fire. Investigator Stevens testified that he concluded the fire was intentionally set based on the nature of the fire and the lack of other likely causes.

{¶10} Cornella Smith testified that she lived in the upstairs unit at 3110 East 99th Street in Cleveland, Ohio. On July 26, 2012, she had been drinking with appellant on the front porch because the area was experiencing a power outage. The two concluded their evening at about nine o'clock. Cornella, also known as Michelle, went inside to her apartment and went to bed with her boyfriend, Barron Horton. She testified that at some point late at night, appellant woke her up asking to borrow a lighter. Cornella gave appellant her lighter and went back to sleep. Cornella testified she awoke to pleas from her younger son Montell to get out of the house because it was on fire. She and Horton left the bedroom and went downstairs. Cornella went to the common hall area and followed appellant's boyfriend, Kenneth Montgomery, into appellant's apartment, followed by Horton and her older son, Montae Smith. Cornella testified that she saw appellant naked, seated in a chair in a mostly empty dining room area, looking at a blanket or sheet on fire in the middle of the room. She testified that appellant got up and went into the bedroom. Cornella's son Montae went back up to their apartment to get a fire extinguisher while Montgomery and Horton attempted to stomp out the fire in the

dining room. Cornella looked into the bedroom and saw the mattress ablaze. She saw the springs of the mattress glowing red with heat and knew that the fire was too big for them to extinguish.

{¶11} Cornella testified she confronted appellant and screamed at her about the fire. She stated that appellant said she just wanted to die and that she thought she had put the fire out. According to Cornella, everyone except appellant left the apartment and went outside to wait for the fire department. Appellant emerged several minutes later and Cornella again began screaming at her about why she would endanger her children's lives. Cornella testified appellant only responded that she thought she had put out the fire.

{¶12} Montae's testimony about that night differed in several important respects from that of his mother. He testified that he was asleep on the third floor of the apartment with his friend Eugene Anthony. His little brother Montell came upstairs and told them to get out of the house. After a moment of disbelief, Montae smelled smoke and the three rushed downstairs and out of the house. He met up with Cornella and Horton on the way out, and the five congregated in the street in front of the house for a brief moment. There, he noticed Montgomery, who he identified only as appellant's guy friend. Montgomery told them that appellant was still inside, and so Cornella and Montae went back into the house to look for her. Montae entered appellant's apartment after his mother. Montae testified that he saw a blanket or some clothes on fire in the dining room. He ran upstairs to get a fire extinguisher and used it on this small fire to put it out.

He then noticed the fire in the bedroom and entered the room. He realized that they could not put out such a large fire, and he and his mother left the house to rejoin the others waiting outside. He did not see appellant in the apartment nor did he hear her say she started the fire. When he left the house, he saw a naked appellant come out of the house right behind him and his mother. Montae testified appellant appeared unhurt and very nonchalant.

{¶13} Cornella's boyfriend, Barron Horton, also testified about the events of that night. He stated he got home around seven o'clock and saw appellant and Cornella drinking on the porch. He went inside to relax and watch some television. He testified that Cornella came upstairs and the two went to bed between 9:00 and 10:00 p.m. He woke when Montell was yelling that the house was on fire. The three headed toward the stairs where they were met by the boys who had been sleeping on the third floor. Horton, Cornella, and Montae went into appellant's apartment while the others went outside. Horton testified that Montgomery was inside attempting to put out a small fire in the living room or dining room. It consisted of a burning blanket or sheet. He attempted to help Montgomery stomp it out while Montae ran upstairs to get a fire extinguisher. Horton entered the bedroom and saw the mattress on fire. He also testified that appellant was sitting on the mattress wrapped in nothing but a blanket as it burned. Horton stated he saw the fire was "starting to blaze," so he exited the bedroom as Cornella entered it. He heard her yelling at appellant, and he heard appellant state that she started the fire.

Everyone quickly left at that point to await the fire department. Horton testified that appellant appeared unhurt.

{¶14} Appellant also testified at trial. She stated she was drinking with Cornella on the front porch because there was a power outage. She admitted being prescribed and taking psychological medication, which had negative interactions with alcohol. She stated that Montgomery came over at one point and she gave him money to leave her alone. The two had a rocky relationship with allegations of a history of domestic violence that included filed charges and a restraining order.

{¶15} Appellant testified that when the power came back on, she went back into her house and took a shower. She stated that she went into Cornella's bedroom late in the evening and woke Cornella up to ask to borrow a lighter. Appellant stated she locked the doors and windows, watched some television, and went to sleep naked because of the extreme heat. Appellant was woken from sleep by a clicking noise. She opened her eyes, and as they adjusted to the light, she saw Montgomery in her bedroom. She testified Montgomery threw a blanket on her that he had set on fire and yelled "die bitch." She testified that he then walked out of the bedroom, out of the apartment, and up the stairs, where she heard him pound on the other apartment door and yell that appellant had started a fire and that everyone should leave the house. Appellant testified that her knee was burned as a result of the fiery blanket.

{¶16} Appellant testified that she got up and attempted to put out the fire by pouring water on it. People began rushing into her apartment, and she was confronted by

Cornella in the dining room about the fire. She denied stating that she started the fire or that she wanted to die. She also said that when she tried to put out the fire by throwing water on it, the fire only got worse.

{¶17} According to appellant, Montgomery started the fire and then immediately told the others that appellant had done it. This, she argues, is why everyone testified that she started the fire and explains why Montgomery did not testify at trial. However, both Cornella and Horton testified that they heard appellant say she started the fire independent of anything Montgomery stated. Further, Cornella testified that appellant indicated she tried to kill herself by setting a fire and that she thought she had put out the fire.

{¶18} Montae's testimony differs in several respects to that of Cornella's and Horton's, but Montae was not in appellant's apartment the entire time that Cornella was. He went up to his apartment to get a fire extinguisher. Further, appellant's testimony is more consistent with that of Cornella's and Horton's. Appellant stated that she saw Cornella and Horton in her apartment during the fire. Only Montae testified that he did not see appellant in the apartment.

{¶19} The excitement and terror of being involved in a house fire may explain some of the differences between the witnesses' testimony, but there is still contradictory testimony in the record about who was where at different points in time. However, everyone testified about appellant's unusually calm demeanor during an otherwise terrifying event. Appellant also claims she was burned by the blanket tossed on her, but everyone else testified that appellant appeared unhurt when she emerged from the house.

{¶20} The differences in the testimony of Montae and the other witnesses does not lead this court to the conclusion that a manifest miscarriage of justice occurred here. Appellant's testimony about the genesis of the fire is implausible. She claims that she was naked when a flaming blanket was thrown on her, but she only sustained a minor burn to her knee. Everyone else testified that appellant appeared unhurt when she exited the house naked or partially covered by a blanket. Further, she claimed that she attempted to put out the fire Montgomery had started by pouring water on the burning bed, but water only made the fire bigger. She claimed something about the way oxygen, water, and fire don't mix explained this. She also could not explain how a blanket or sheet on fire in the dining room got there.

{¶21} Appellant's admissions made during the fire weigh in favor of conviction. Arson convictions based on nothing more than admissions are not uncommon. *See, e.g., State v. Kyle*, 3d Dist. Henry No. 7-05-05, 2005-Ohio-5890 (aggravated arson conviction found not to be against the manifest weight of the evidence where defendant told several people that he started a fire at his former apartment).

{¶22} After our independent review of the record, we find that the trial court did not lose its way and create a manifest injustice in finding appellant guilty of seven counts of aggravated arson. The contradictions in the testimony are not sufficient to overcome the evidence of admissions made by appellant during the chaotic scene of the fire and immediately thereafter when coupled with appellant's behavior and implausible testimony at trial.

## B.   Restitution and Ineffective Assistance of Counsel

**{¶23}** In the second and third assignments of error, appellant claims she was acquitted of the count of arson relating to the victim for which the trial court imposed restitution.   Appellant also claims trial counsel was ineffective for failing to object to this error.   Appellant is wrong.

**{¶24}** The trial transcript indicates appellant was found guilty of Count 2, aggravated arson with Kenneth Montgomery as the named victim.   In setting forth its verdict, the court indicated,

> [a]nd I find that the evidence establishes that Ms. Carter, beyond a reasonable doubt, set the fire.

> Count 2 alleges that this fire created a substantial risk of serious physical harm to Ken Montgomery.  I find that he was present at the time, that it would have created a substantial risk of serious physical harm to him.

> Count 3 alleges the same with regard to Michelle Smith.

> Count 4 alleges the same with regard to Barron Horton.

> Count 6 alleges the same with regard to Montae Smith.

> Count 7 applies to Montell Smith.

> And Count 8 applies to Eugene Anthony.

> I find that those are all proven beyond a reasonable doubt.

**{¶25}** Appellant was convicted of arson related to Montgomery, and it was not error for the trial court to award restitution to him.   Appellant's arguments on this issue are demonstrably incorrect after a reading of the transcript.

**{¶26}** Additionally, appellant's claim of ineffective assistance of counsel relates solely to counsel's failure to object to restitution. Because restitution was imposed for a victim of appellant's crimes, counsel did not err in failing to lodge such an objection.

**{¶27}** However, the court's journal entries contain errors, which prompted appellant's arguments in the present appeal. The journal entry memorializing the verdict incorrectly states appellant was found not guilty of Count 2. Additionally, the court imposed sentence on this count but also found that it merged with other counts related to the named victims. The sentencing colloquy indicates, "I'm going to impose five years on Count 1, five years on Count 2, the aggravated arson, and Count 3, the aggravated arson. All the other counts, Counts 2, 4, 6, 7, and 8, all will merge into Count 3 for sentencing purposes." A nunc pro tunc entry may be used to correct the error related to the finding of guilt as to Count 2 because it is an amendment of the entry to reflect what actually occurred, but not to correct the second error.

**{¶28}** The court erred when it both imposed sentence on Count 2 and stated that it merged with Count 3. *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17. A nunc pro tunc entry may only be used to correct a journal entry to reflect what actually occurred. *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 13. Here, the record indicates the court intended to merge Count 2 with Count 3 for sentencing purposes, but that it also imposed a sentence on each of those counts. A nunc pro tunc entry is an improper remedy in this situation. *State v. Peck*, 7th Dist. Mahoning No. 12 MA 205, 2013-Ohio-5526, ¶ 19 ("It cannot be used to

substantively correct or change the proceedings themselves"). Therefore, the case must be remanded so that the trial court can hold a sentencing hearing properly merging Count 2. The court must also correct the verdict and sentencing journal entries related to appellant's finding of guilt on Count 2.

### III. Conclusion

**{¶29}** Appellant's convictions for aggravated arson are not against the manifest weight of the evidence, and the trial court properly imposed restitution in favor of one of her victims. However, the trial court's journal entries contain errors that require remand to correct. The trial court must modify the entries related to the verdict and sentence to indicate appellant was found guilty of Count 2, and hold a resentencing hearing where Counts 2 and 3 can be properly merged.

**{¶30}** Convictions affirmed; cause reversed in part and remanded to the lower court for resentencing consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KENNETH A. ROCCO, J., and
EILEEN T. GALLAGHER, J., CONCUR