[Cite as *State v. Pointer*, 2014-Ohio-4081.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100608

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GENE A. POINTER

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-12-566759-A and CR-13-573507-A

**BEFORE:** Stewart, J., E.A. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 18, 2014

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH   44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Justin P. Rudin
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

MELODY J. STEWART, J.:

{¶1} A jury found defendant-appellant Gene Pointer guilty of aggravated arson. The evidence against Pointer consisted of the following: an intentionally set fire occurred in a house that he rented, he had the only key to the house, he was seen leaving the house shortly before the fire was reported, and he had a motive to start the fire because he had been evicted from the house for nonpayment of rent. Pointer claims this evidence was not enough to prove that he acted knowingly to cause the fire and thus claims that there was insufficient evidence to support the jury's verdict and that the verdict was against the manifest weight of the evidence.

I

{¶2} We first address Pointer's claim that there was insufficient evidence to prove that he committed arson.

{¶3} The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The relevant inquiry for an appellate court presented with a claim that the evidence at trial was constitutionally insufficient is "whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶4}** The state charged Pointer with aggravated arson under R.C. 2909.02(A)(2). That section states that "no person, by means of fire or explosion, shall knowingly * * * [c]ause physical harm to any occupied structure." R.C. 2909.01(C) defines "occupied structure" in pertinent part as any house, building, or other structure that is maintained as a permanent or temporary dwelling, regardless of whether it is temporarily unoccupied or whether any person is actually present.

**{¶5}** The crucial question at trial was whether the state offered evidence from which a rational trier of fact could conclude that Pointer knowingly caused harm to the house by means of fire. In its closing argument, the state explained its theory of the case:

> [O]n the night of April 15, 2013, the defendant, Gene Pointer, went into the house he was renting one last time, with revenge on his mind, and gasoline in his hands. He took that gasoline, dumped it in an empty bedroom, and then set the house on fire.
>
> Why did he do it? Payback. Payback for getting evicted after he stiffed his landlord with the rent.

Tr. 821.

**{¶6}** The state had no direct evidence that Pointer was in possession of gasoline, much less that he knowingly ignited gasoline in order to damage the house. Instead, it resorted to circumstantial evidence of guilt.

**{¶7}** "Circumstantial" evidence is defined as "'[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought proved.'" *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting *Black's Law Dictionary*

221 (5th Ed.1979). The distinction between direct and circumstantial evidence is that direct evidence can prove a fact by itself; circumstantial evidence proves a fact from which an inference of the existence of another fact may be drawn.

{¶8} Viewing the facts most favorably to the prosecution shows that the landlord testified that Pointer was habitually late with his rent payments, so he told Pointer that eviction proceedings would be initiated in court. On April 14, 2013, the landlord called Pointer to tell him that he would have to move out. Pointer said that he would move out the following day, April 15, 2013. There was inconsistent testimony on whether Pointer was the only person with a key to the house, so the state is entitled to have the inconsistency construed most favorably to it to show that Pointer possessed the only key.

{¶9} On the day of April 15, 2013, Pointer's sister, who rented an adjoining house from the same landlord, said she saw Pointer taking "garbage bags and stuff out of the house all day." She testified that when Pointer left the house for the last time, he exited through the front door and locked it from the outside. Pointer's sister testified that she saw Pointer leave the house no later than 10:05 p.m. because he did so not more than five minutes after the end of a television program she had been watching. The sister gave inconsistent testimony as to when she and her daughter first noticed the fire: she believed it could have been anywhere from 40-60 minutes after she last saw him leave. A more accurate time would have been closer to 11:23 p.m., the time when the fire department log showed the fire being reported by the daughter.

{¶10} A fire investigator testified that the doors to the house were locked when firefighters arrived. He believed the fire started in a first-floor bedroom of the house. Damage to the flooring in that room indicated that gasoline had been used as an accelerant. This suspicion was confirmed by a device that measured particulate matter in the air for the presence of hydrocarbons, a fundamental ingredient of gasoline. The investigator also noted that a gas valve in the kitchen was partially-opened and he could smell natural gas. The investigator believed that it would have taken 20 minutes for the fire to become noticeable. In the investigator's opinion, three things indicated arson: the use of gasoline as an accelerant, the open gas valve in the kitchen, and that the doors were locked, suggesting that the arsonist wished to prevent access to the premises while the fire burned.

{¶11} Pointer's niece (his sister's daughter) told the police that she believed that Pointer would be staying with his brother who lived a few blocks away. When the investigators arrived at the brother's home at 1:30 a.m., they found Pointer. They collected air samples from his clothes and hands, but did not get any significant readings indicating the presence of flammable fluids. Likewise, the police found no gasoline cans or any evidence of the source of ignition.

{¶12} Although there was no direct evidence that Pointer started the fire, a rational trier of fact could conclude that these facts were circumstantial evidence of arson. The courts have consistently noted that arson prosecutions rely heavily on circumstantial evidence. *See State v. Carter*, 8th Dist. Cuyahoga No. 99925, 2014-Ohio-926, ¶ 8; *State*

*v. Pahlau*, 5th Dist. Stark No. 2006-CA-00010, 2006-Ohio-4051, ¶ 30.  In addition to the use of circumstantial evidence in arson prosecutions, courts give weight to "motive and opportunity [as] facts which can weigh heavily in establishing arson."  *State v. Pruiett*, 9th Dist. Summit No. 12858, 1987 Ohio App. LEXIS 6481, *3 (Apr. 15, 1987).

{¶13} Pointer had the opportunity to set the fire.  He was the last person seen leaving the house and the only person with a key to it.  The fire started shortly after he left the house, and firefighters gave firm testimony that the house was locked when they arrived and that the fire had been started inside the house.  Pointer also had a motive to start the fire given his recent eviction from the premises.  On these facts, the jury could rationally conclude that the state showed that Pointer knowingly caused physical harm to the house by means of fire.

## II

{¶14} Pointer next argues that the jury's verdict is against the manifest weight of the evidence.  He argues that some of the testimony was uncertain and inconsistent; notably, testimony by his sister as to when the fire occurred.  He also argues that the state's case suffered from the lack of any physical evidence to tie him to the crime.

{¶15} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Otten*, 33 Ohio App.3d

339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier-of-fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶16} Pointer's sister placed him at the house shortly before the fire started by saying she recalled seeing him there while she was watching her favorite television program. Pointer was able to prove that this program did not air at a time when the sister said it did. While this proof undermined the sister's credibility, it was not so damaging as to undermine the entirety of her testimony. The sister firmly recalled seeing Pointer leave the house not long before the fire started. While the time when he last left the house was significant in determining how long it might have taken for the fire to reach the point that it was noticeable, what was more significant was that the house was locked and otherwise undisturbed when the fire department arrived. Those facts very strongly implicated Pointer as the arsonist. Any inconsistency on when the sister might last have seen Pointer leave the house was not so great as to undermine other facts showing that Pointer was the last person to leave.

{¶17} Pointer notes that there were no traces of flammable fluids found on him or his clothes just hours after the arson, indicating a lack of physical evidence against him.

Obviously, proof that Pointer had traces of gasoline on his person or clothing would have been compelling of his guilt. But a fire investigator said the absence of flammable fluids was unsurprising. The arson investigator said that two hours had elapsed from when the fire started to when he tested Pointer and that Pointer may have changed his clothing and washed his hands to remove all traces of flammable fluids or those fluids may have evaporated. The arson investigator likewise noted that Pointer may have been wearing gloves when he poured the gasoline or may have been careful and not spilled gasoline on his hands as he set the fire. All of these factors would explain why no flammable fluids were detected on Pointer.

{¶18} Pointer argues that it made no sense for him to set the house afire when the evidence showed that some of his possessions, including a couch and refrigerator, were destroyed in the fire. This argument carries little weight because there was no evidence that these items had any value to him. The jury could reasonably conclude that any items remaining in the house after he left the house and locked it were abandoned.

{¶19} The inconsistencies in the state's evidence can be explained away; Pointer's motive and opportunity to start the fire cannot. The jury could reasonably conclude that Pointer, being the last person in the house and having the only key to the otherwise locked premises, had the opportunity to start the fire. He likewise had a demonstrable motive to start the fire as retaliation for being evicted. For these reasons, the jury's verdict was not against the manifest weight of the evidence.

III

{¶20} During closing argument, the state characterized Pointer's defense as being one of "coincidence" — coincidence that a random arsonist started the fire after Pointer left the premises; coincidence that Pointer had removed all of his possessions before the fire started; and coincidence that Pointer was the last person seen leaving the premises. The state went on to say: "It's just a coincidence that after all the witnesses and everything you heard this defendant doesn't have an alibi." Pointer did not give notice of his intent to offer an alibi, but he did not contemporaneously object to the state's mention of an alibi. The court raised the matter on its own initiative and instructed the jury that Pointer did not raise an alibi defense so he did not have to prove an alibi, that the burden of proof remained at all times on the state, and that "I want to cure this by saying to you that alibi does not come into play in this case whatsoever." Pointer then asked for a mistrial. The court denied the motion for a mistrial and Pointer now argues that was an abuse of discretion.

{¶21} Pointer did not offer a contemporaneous objection to the state's remark; in fact, the court raised the issue and Pointer did not request a mistrial until after the jury returned its verdict. On this basis alone, the motion for a mistrial was untimely. *State v. Brletich*, 7th Dist. Columbiana No. 98 CO 84, 2000 Ohio App. LEXIS 2965 (June 28, 2000).

{¶22} Even if we assume for purposes of this assignment of error that the state's reference to Pointer's failure to provide an alibi was improper because it implied that Pointer had the obligation to refute the state's case despite having no burden of proof and

having the right to remain silent under the Self-Incrimination Clause of the Fifth Amendment to the United States Constitution, *Griffin v. California*, 380 U.S. 609, 613-614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), there is no prejudice. Defense counsel agreed that the curative instruction was necessary, telling the court, "I think that the only thing that could take place at this point would be a curative instruction." The court gave a very comprehensive curative instruction that we must presume the jury followed. *See State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). By agreeing that a curative instruction was necessary, Pointer has no basis for claiming that he was entitled to a mistrial and that the court abused its discretion by denying it.

IV

{¶23} During discovery, Pointer learned that there had been an arson at the detached garage of a different residence where his sister resided more than ten years prior to the events in this case. He wished to cross-examine her with the intent to discern whether she was involved in starting that fire, but the state objected by citing Evid.R. 608(B) and arguing that the defense was trying to impeach the sister with a specific instance of conduct for the purpose of attacking her character for truthfulness. The court concluded that line of questioning would "lead this jury down the wrong path" and that the probative value of a fire occurring more than ten years ago was outweighed by its prejudicial effect.

{¶24} Evid.R. 608(B) states:

Specific instances of the conduct of a witness, for the purpose of attacking
or supporting the witness's character for truthfulness, other than conviction

of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶25} To justify his desire to question the sister on the prior fire, Pointer claimed that a police report indicated that the fire occurred in the garage of the house where the sister formerly lived. But that report stated that "persons unknown" started the fire. With the police having no suspects for that arson, Pointer had no basis for suggesting that the sister had any involvement in starting that fire such that she could plausibly be considered the person who started the fire in this case.

{¶26} Pointer maintains that he was not suggesting that the sister had been *convicted* of any prior arson, but that an arson had occurred in another residence where she lived. If that was truly Pointer's intent, the court did not err by finding it irrelevant to the issue of Pointer's guilt. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." An unresolved arson case occurring more than ten years previous to the events occurring in the case had no relevance at all to the charges against Pointer. The court has discretion to limit cross-examination to avoid prejudice, repetition, confusion, or harassment. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678-679, 89 L.Ed.2d 674, 106 S.Ct. 1431 (1986). The sister had never been charged with arson, but Pointer wanted to put her on trial to

have the jury believe that she may have started a fire more than ten years ago and was capable of doing so in this case. The court could rationally believe such questioning would confuse the jurors and cause them to focus on what was irrelevant. That was a proper basis for exclusion.

V

{¶27} The court allowed the state to call as a witness a police officer who was not disclosed prior to trial as a potential witness. Pointer argues that the witness should have been excluded due to noncompliance with Crim.R. 16 (he does not specify the applicable division of the rule).

{¶28} We summarily overrule this assignment of error because violations of Crim.R. 16 are subject to the court's discretion under Crim.R. 16(L)(1) and Pointer does not argue that the court abused its discretion. In addition, Pointer makes no argument that he was prejudiced by the witness's testimony nor is any prejudice manifest from the record — the witness in question testified that he followed other investigators who wished to question Pointer because his patrol vehicle had a "cage" in the event a suspect would need to be transported. The absence of any prejudice wholly undermines any argument that the court abused its discretion by allowing the witness to testify.

VI

{¶29} Finally, Pointer complains that the court erred by admitting into evidence three cans that held samples of rugs and carpet taken from the house. He opposed their admission into evidence on chain of custody grounds, arguing that there was no testimony

as to when the cans were sealed, who did the sealing, and how they were sealed. The state did not contest the substance of Pointer's objection (it conceded there was a "slight" break in the chain of custody), but argued that any break in the chain of custody went to the weight of the evidence, not its admissibility.

{¶30} "A chain of custody essentially shows that the offered item of evidence is authentic as having been in the continuous possession of the state, thus eliminating the possibility that the item has been tampered with or altered from its original form." *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 32; *see also* 2 McCormick, *Evidence*, Section 213, at 14 (7th Ed.Broun Ed.2013) (chain of custody evidence typically "entail[s] testimony that traces the [possession] of the item from the moment it was found to its appearance in the courtroom.") In order for evidence to be admissible, however, a complete chain of custody need not always be proved — its admissibility only requires evidence from which the trier of fact could reasonably believe that an item still is what the proponent claims it to be. *See* Evid.R. 901(A). Questions regarding a chain of custody thus go to the weight, not the admissibility, of evidence. *See State v. Richey*, 64 Ohio St.3d 353, 360, 595 N.E.2d 915 (1992).

{¶31} Pointer argues that it was unclear who transported the cans to the police station and that the lab analyst who tested the samples said that they were mislabeled. Beginning first with the argument that the cans were mislabeled, testimony by the lab analyst confirmed that two of the three cans were mislabeled — the samples did not match the color indicated on the outside of the can. The arson investigator collected two

samples of carpet from the house that bore traces of hydrocarbons and a third sample of carpet from an area that did not have any traces of hydrocarbons. He sealed those samples in airtight containers using temporary identification marks, and later affixed more detailed labels in preparation for testing. He conceded that he had, through inadvertence, crossed the comparison sample with another sample. Nevertheless, the jury could very reasonably conclude the inadvertency was trifling — test results showed that two of the three samples tested positive for gasoline, confirming the arson investigator's initial findings that gasoline had been used as an accelerant.

{¶32} The manner of how the cans were transported to the police station is even less compelling than the mislabeling of the cans. The arson investigator testified that he not only placed the temporary marks on the cans at the scene of the fire, but that he affixed more permanent identification labels to those cans at the police station. He gave no indication that the cans had been tampered with in any way during transportation and Pointer gives us no basis for finding that they were tampered with during transport. He does nothing more than raise the possibility that tampering might have occurred. The jury could give little weight to that argument given the undeniable fact that a fire occurred and that laboratory testing confirmed that gasoline had been used as an accelerant.

{¶33} The assigned errors are overruled.

{¶34} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR